UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Honorable Howard R. Tallman

In re:                                        )
                                              ) Case No. 13-11894 HRT
CST GROUP, INC.,                              ) Chapter 11
                                              )
Debtor.                                       )
                                              )

### ORDER

This case comes before the Court on the *Motion for Relief from Stay* (docket #32) (the "Motion for Relief from Stay") and the *Motion to Prohibit Use of Property Including Cash Collateral and for Adequate Protection* (docket #34) (the "Cash Collateral Motion") filed by Grosvenor Enterprises, Inc.; and on the Debtor's *Motion for Order Authorizing Use of Cash Collateral* (docket #55).

On April 9, 2013, the Court conducted a preliminary hearing on the Motion for Relief from Stay. At that time, the Court set the matter over for a final hearing. The Court set the cash collateral motions for hearing at the same time. On Monday, April 29, 2013, the Court conducted its hearing on all three pending motions. The Court has considered the evidence and argument presented by the parties and is ready to rule.

### I. BACKGROUND FACTS

On September 1, 2011, the Debtor, purchased the assets of Greenfields Sports Bar, Inc. Prior to the sale, Greenfields Sports Bar, Inc., operated a pool hall and sports bar ("Greenfields") located in Lakewood, Colorado. The Debtor has continued the operation of the business. Subsequent to the sale, because Greenfields Sports Bar, Inc., sold its name as part of the transaction, it changed its corporate name to Grosvenor Enterprises, Inc. ("GEI").

The Debtor paid a purchase price of $302,000.00 for the business assets in the form of a $90,000.00 cash down payment and a promissory note – now payable to GEI – in the face amount of $212,000.00 [the "Note"]. The Note carries interest at a variable rate of 3% over prime. Payments are amortized over 10 years but the Note is payable in full in 5 years. The current non-default monthly payment is just over $2,700.00.[1]

The Note is secured by a security agreement granting GEI a lien on all of the Debtor's tangible and intangible assets. The Note is also personally guaranteed by the Debtor's three

---

[1] By the Court's calculation, 3% over the 3.25% prime interest rate reported in the Wall Street Journal is currently 6.25%. Using that interest rate, according to the terms of the Note, the monthly payment should be $2,745.60.

ORDER
Case No. 13-11894 HRT

owners, Shawn McKelvy, Timothy Mitchell and Charles Williamson. Mr. McKelvy and Mr. Mitchell are actively involved in the business. Mr. Williamson continues to be an owner but is no longer involved in management of the business.

As part of the sale transaction, the Debtor assumed the lease of the retail space that houses Greenfields. In order to induce the landlord to allow the assumption, GEI's principal, Todd Grosvenor, personally guaranteed payments on the lease for two years following the assumption. The principal amount of the Note includes $12,000.00, payable at the rate of $500.00 per month without interest. That amount is intended as compensation for Todd Grosvenor's personal guarantee and is a part of the debt subject to GEI's lien.

This chapter 11 proceeding was filed on February 12, 2013. On March 15, 2013, GEI filed its Motion for Relief from Stay and its Cash Collateral Motion. Proofs of claim filed in the case reveal substantial claims by taxing authorities. Colorado Department of Revenue has filed a secured tax claim of $17,893.33 on account of unpaid sales taxes from June through December, 2012. The Internal Revenue Service has filed a claim in the total amount of $72,106.79. Its claim includes a secured claim for $44,287.75 on account of unpaid social security withholding and a priority unsecured claim of $25,170.57 on account of unpaid social security withholding and federal unemployment taxes. The remaining $2,648.47 general unsecured claim is for penalties.

The Debtor's principals admit to a lack of experience in the operation of a business and claim to have gotten bad guidance from advisors that led to their problems, at least in part. The Debtor has put together a budget and a plan worksheet. Taken at face value, the budget shows the Debtor's revenues exceeding expenses by $5,292.00 monthly. The Debtor would fund its plan with that excess. The plan would pay the tax claims in full over 5 years; it would pay GEI the value of its collateral as a secured claim, amortized over 5 years at 4.5% interest; and it would pay the remainder of GEI's claim as unsecured. On its schedules, the Debtor valued GEI's collateral at $94,421.14. GEI's expert witness valued the Debtor's equipment at $38,994.50. That figure represents an auction value for the equipment only and does not account for GEI's security interest in food inventory, liquor inventory, or intellectual property.

Post-petition operations have been unprofitable. In February, 2013, the business showed an operating loss of $12,529.00. In March, 2013, the business showed an operating loss of $29,953.00. No taxes have been remitted to taxing authorities post-petition. The February operating report shows new total tax liability accruals of $8,762.98; for March, the operating report shows new tax accruals for the month of $16,762.00. In approximately one and one-half months of post-petition operations the Debtor has incurred over $25,000.00 of new unpaid tax liability. The losses reflected in the Debtor's operating reports were sustained while making no payment to the Debtor's secured creditor.

ORDER
Case No. 13-11894 HRT

## II. DISCUSSION

This case highlights the tension between the desire of the bankruptcy courts to afford a reasonable opportunity to a debtor to reorganize its affairs under the Bankruptcy Code and the necessity to insure that the interest of the business's secured creditors are not eroded during that reorganization process.

A.  Motion for Relief from Stay under 11 U.S.C. § 362(d)

GEI seeks relief from the automatic stay in bankruptcy and claims both that the Debtor is failing to adequately protect its security interest, 11 U.S.C. § 362(d)(1), and that the debtor lacks equity in the property subject to the creditor's security interest and that the property is not necessary to the debtor's reorganization.  11 U.S.C. § 362(d)(2).

*1)  11 U.S.C. § 362(d)(1) Lack of Adequate Protection*

GEI seeks relief under 11 U.S.C. § 362(d)(1) for cause based on a lack of adequate protection of its interest in the Debtor's property.  Because the evidence demonstrates that GEI is not protected by a cushion of value over and above the amount the debt, the Debtor must provide some form of protection for GEI's interest.

"The whole purpose in providing adequate protection for a creditor is to insure that the creditor receives the value for which the creditor bargained prebankruptcy."  *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987) (citing House Rep. No. 95-595, 95th Cong., 2d Sess. 53, reprinted in 1978 U.S. Code Cong. & Admin. News 5787, 5963, 6295.).  *See also In re DB Capital Holdings, LLC*, 454 B.R. 804, 816-17 (Bankr. D. Colo. 2011) ("Adequate protection is, essentially, protection for the creditor to assure its collateral is not depreciating or diminishing in value and is evaluated on a case-by-case basis.") (citing *In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. 1987)).

GEI holds a security interest in all of the Debtor's assets.  The primary tangible asset is the Debtor's business equipment.  That equipment includes generally kitchen and bar equipment, bar stools, tables and chairs, pool tables and poker tables.  The evidence in this case is that the auction value of the Debtor's equipment is approximately $38,994.50.  GEI's evidence is that the principal balance due on its Note is just over $185,000.00 and that the last payment received on that obligation was in November of 2012.  GEI is undersecured and, thus, not protected by an equity cushion.

The equipment is in average to above average condition overall and it is declining in value due to normal wear and tear.  The evidence does not allow the Court to quantify the deterioration of the Debtor's equipment from normal wear and tear.  The value of GEI's security interest may also be deteriorating due to the Debtor's non-payment of certain state and local

ORDER
Case No. 13-11894 HRT

taxes. However, the evidence is insufficient to allow the Court to quantify which, if any, of the unpaid taxes have created liens that affect GEI's security interest. But, knowing the rate of deterioration of GEI's interest is not essential in this case.[2]

> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by–
> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
> (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
> (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361. The Debtor has offered GEI adequate protection in the form of periodic payments of $2,600.00 per month.

As explained more fully below, the evidence before the Court shows that the Debtor lacks the wherewithal to pay its usual and required operating expenses. It is losing money on its monthly operations and it has not remitted any post-petition payments to taxing authorities – not even tax payments representing sales tax collections and employment taxes withheld from employee compensation. Debtor has given the Court no evidence whatever that it has the ability to perform its promise of providing adequate protection to GEI. The Court finds that the Debtor's offer of adequate protection payments is wholly illusory and that the Debtor has not carried its burden to prove that GEI is adequately protected by its offer of periodic payments. GEI is, therefore, entitled to relief from the automatic stay for cause under 11 U.S.C. § 362(d)(1) because its interest in the Debtor's property is not adequately protected.

---

[2] The rate of decline in the value of a creditor's lien is frequently essential in order for a court to evaluate the sufficiency of a debtor's offer of adequate protection. But here, the issue is not the sufficiency of the Debtor's offer so much as whether or not the Debtor has the ability to perform a promise of adequate protection payments.

ORDER
Case No. 13-11894 HRT

*2) 11 U.S.C. § 362(d)(2) Lack of Equity and Not Necessary for Reorganization*

With an auction value of around $38,000.00 and a Note principal balance of over $185,000.00, there is no issue with respect to equity in the collateral. It is clear that there is none. The only open question under § 362(d)(2) is whether the collateral is necessary for an effective reorganization.

If this Debtor is to continue its business, GEI's collateral is essential to that purpose. But that is only the beginning of the inquiry. The Supreme Court has explained that necessity for reorganization under § 362(d)(2)

> requires . . . not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*. This means, as many lower courts, including the en banc court in this case, have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time."

*United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 375-76 (1988) (quoting *In re Timbers of Inwood Forest Associates, Ltd.*, 808 F.2d 363, 370 (5th Cir. 1987)). "The mere indispensability of the property to the debtor's survival and the debtor's hopes of reorganization are insufficient to justify continuation of the stay when reorganization is not reasonably possible." *In re Timbers of Inwood Forest Associates, Ltd.*, 808 F.2d at 370-71.

The Court concludes that the Debtor has failed to show that it has a reasonable possibility of a successful reorganization within a reasonable time. As a consequence, the Court will grant relief from the automatic stay under 11 U.S.C. § 362(d)(2). The Debtor's continuing post-petition operating losses and its failure to pay post-petition taxes are primary factors leading to the Court's determination.

The Debtor filed this case on February 12, 2013. It has filed operating reports for the months of February and March. Its February operating report shows a loss of $12,529.00 on revenues of $72,702.00. For March, the loss was $29,953.00 on revenues of $69,065.00. For the two months combined, the Debtor's operating reports show that the total of its goods sold and operating expenses has exceeded the Debtor's revenues by 30%.

The Debtor has submitted a budget that projects profitable operations. Mr. McKelvy testified as to the operational changes that will bring the Debtor into profitability. The Debtor has discontinued overtime and has cut back on its kitchen operations in order to save labor costs. It has repriced its menu to take account of its food costs. It has changed its food vendor and has switched to some lower cost liquor selections. It has eliminated food and drink discounts to the employees.

ORDER
Case No. 13-11894 HRT

The most notable cut in the Debtor's budget projections from what appears in its post-petition operating reports is in the cost of goods sold. In February, that amounted to $48,587.00 and in March it was $42,309.00. The Debtor's future projection is $27,000.00 per month for the cost of goods sold. That represents a 36% reduction in that line item from what appears in the Debtor's most recent operating report and adds up to a reduction of over $180,000.00 annually from the Debtor's current level of expense for goods sold. Moreover, at the same time that the Debtor's projected cost of good sold is to be cut by over $180,000.00 on an annual basis, revenues are projected to average $75,500.00 monthly – higher than the $72,702.00 and $69,065.00 shown on the February and March operating reports respectively. The Debtor's evidence does not explain: 1) how the Debtor hopes to achieve a savings of that magnitude in its cost of goods;[3] or 2) how the Debtor will maintain revenues somewhat above current levels while achieving a 36% cut in its cost of goods. There is scant evidence before the Court to support the cost savings contained in those projections, therefore, the Court can give the Debtor's projections little evidentiary weight.

The evidence before the Court does not allow it to find that the Debtor has a "plan in prospect." Non-payment of post-petition tax obligations is one of the enumerated grounds for dismissal of a chapter 11 case listed in 11 U.S.C. § 1112(b)(4) and for good reason. Taxes are a core business obligation. In the context of a retail business that is withholding payroll taxes from employee compensation and collecting sales taxes, those are funds that the business holds in trust for the taxing authorities. *See, e.g.,* 26 U.S.C. § 7501. Failure to pay over such "trust fund taxes" may result in civil penalties, *see, e.g.,* 26 U.S.C. § 6672, and even criminal penalties, *see, e.g.,* 26 U.S.C. § 7202, assessed against the individuals within the organization that are responsible for the failure to pay over the taxes. Thus, the Debtor's continued failure to pay over trust fund taxes, especially in light of the severe penalties that may be assessed against individual officers of the Debtor, is substantial evidence of the Debtor's inability – at least under its current management – to generate cash flow necessary to satisfy even its most basic obligations. Under these circumstances, given the evidentiary record, the Court cannot conclude that the Debtor has demonstrated that there is "a reasonable possibility of a successful reorganization within a reasonable time," *In re Timbers of Inwood Forest Associates, Ltd.*, 808 F.2d at 370, even under the forgiving standard that the Court employs with respect to such a determination at this early stage of a reorganization case. *See, e.g., In re DB Capital Holdings, LLC*, 454 B.R. 804, 819 (Bankr. D. Colo. 2011) ("This standard has been referred to as the 'sliding scale' burden of proof, 'intended to benefit debtors who have a realistic chance of reorganization but who have not had sufficient time to formulate a confirmable plan.'") (citations omitted).

---

[3] Mr. McKelvy did testify as to his projected yearly savings on some of his cost-cutting measures. Some, but not all, of those measures related to cost of goods sold. However, the testimony concerning savings from the cost-cutting measures did not come close to explaining the magnitude of savings appearing in the Debtor's projected expenditures.

ORDER
Case No. 13-11894 HRT

B. Use of Cash Collateral

Under 11 U.S.C. § 363,

The [debtor-in-possession] may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless–
(A) each entity that has an interest in such cash collateral consents; or
(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2).

The Debtor has used GEI's cash collateral since the inception of the case without obtaining GEI's consent or seeking leave of Court.[4] The cash collateral issue now comes before the Court on the parties opposing motions. GEI seeks to prohibit the Debtor's use of its cash collateral and the Debtor seeks leave of Court to use cash collateral.

Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide *adequate protection* of such interest. . . .

11 U.S.C. § 363(e) (emphasis added).

At the conclusion of the hearing on April 29, the Court allowed the Debtor to continue using GEI's cash collateral for normal ongoing post-petition operations pending the Court's determination of GEI's motion. Given the Debtor's lack of showing of a reasonable likelihood of rehabilitation, the Court now grants GEI's request to prohibit the Debtor from continuing to use its cash collateral.

GEI holds a security interest in all of the Debtor's assets, including its cash. The evidence of the Debtor's actual performance[5] since the petition date shows an operation that

---

[4] It was not until after GEI filed its Cash Collateral Motion that the Debtor filed its motion seeking the Court's permission to use cash collateral.

[5] The Debtor's projected budget shows a vastly different story from Debtor's actual post-petition performance illustrated by Debtor's monthly operating reports. The Court, as previously noted, can place no reliance on Debtor's projections because the evidence fails to explain the
(continued...)

ORDER
Case No. 13-11894 HRT

continues to lose money with the result that GEI's interest in its collateral is steadily deteriorating.

In the typical case, a Debtor will be allowed to use its secured creditor's cash collateral to pay ordinary operating expenses in order to maintain a debtor's going concern value. *See, generally, In re Morning Star Ranch Resorts*, 64 B.R. 818 (Bankr. D. Colo. 1986).[6] But, in this case, the evidence before the Court is that the Debtor is losing money in its monthly operations and it has been unable to pay its post-petition tax obligations. Debtor has used GEI's cash collateral without seeking GEI's consent or leave of Court. Notwithstanding its use of GEI's cash collateral, Debtor has not even been able to pay its normal operating expenses because it is continuing to accrue unpaid tax liabilities. Under the circumstances of this case, with Debtor's current management in place, GEI's interest in its collateral continues to decline. Absent GEI's consent, Debtor's continued use of GEI's cash collateral cannot be justified.

Debtor argues that it has offered adequate protection to GEI in the form of periodic payments in the amount of $2,600.00 per month. But the Court has found the Debtor's offer of adequate protection to be illusory because the preponderance of the evidence persuades the Court that the Debtor lacks the ability to make the promised adequate protection payment to GEI.

### III. CONCLUSION

In accordance with the above discussion, it is

**ORDERED** that Grosvenor Enterprises, Inc.'s *Motion for Relief from Stay* (docket #32) is GRANTED. It is further

---

[5](...continued)
substantial differences between the Debtor's current actual operating results and the Debtor's projections.

[6] In *In re Morning Star Ranch Resorts*, the court analogized a debtor-in-possession to a state court receiver. 64 B.R. 818, 820-21 (Bankr. D. Colo. 1986). It found that, under the applicable statute, COLO. REV. STAT. § 38-39-112 (1982) (now COLO. REV. STAT. § 38-38-601), and under the parties' deed of trust, the creditor was entitled to seek appointment of a receiver for the real property upon the filing of a foreclosure action. The Court further found that a state court receiver would be obligated to "preserve, protect and maintain the property . . . bring current delinquent taxes, pay for insurance and repairs, and protect title to the property." *Id*. at 822. In addition, "[i]f a receiver were to operate the Debtor's property, he would be required to pay the operating expenses." *Id*.

ORDER
Case No. 13-11894 HRT

**ORDERED** that Grosvenor Enterprises, Inc.'s *Motion to Prohibit Use of Property Including Cash Collateral and for Adequate Protection* (docket #34) is GRANTED. Absent GEI's consent, the Debtor is prohibited from using GEI's cash collateral. It is further

**ORDERED** that Debtor's *Motion for Order Authorizing Use of Cash Collateral* (docket #55) is DENIED.

Dated this 22nd day of May, 2013.

                                                **BY THE COURT:**

                                                Howard R. Tallman, Chief Judge
                                                United States Bankruptcy Court